**THOMAS HYLL FUNERAL HOME, INC. Appellant/Cross Appellee,**

**v.**

**Joseph BRADFORD, Appellee/Cross Appellant.**

**No. CIV.A.1998/136.**

District Court, Virgin Islands, Appellate Division, D. St. Croix.

Considered: Dec. 7, 2000.

Filed: Sept. 13, 2002.

---

Richard P. Farrelly, Birch, deJongh, Hindels & Hall, St. Thomas, VI, for Appellant/Cross Appellee.

Diane M. Russell, Holt & Russell, St. Croix, VI, for Appellee/Cross Appellant.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and RHYS S. HODGE, Judge of the Territorial Court of the Virgin Islands, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Following trial in the Territorial Court of the Virgin Islands awarding a verdict in favor of Joseph Bradford ("Bradford" or "appellee") in the amount of fifty thousand dollars ($50,000), Thomas Hyll Funeral Home, Inc. ("Funeral Home" or "appellant") filed a motion for new trial or, alternatively, for remittitur of the judgment and damage award. The Funeral Home now appeals the ruling of the Territorial Court denying its motion, and raises two issues to be determined by this Court:

(1) Whether the trial court abused its discretion by failing to vacate the judgment entered and order a new trial on

damages for reason of an excessive verdict against the weight of the evidence; and

(2) Whether the trial court abused its discretion by failing to remit the jury's verdict and damage award.

Following the Funeral Home's appeal, Bradford filed a cross appeal challenging the trial court's post-trial dismissal of several of his claims. His appeal raises the following issues:

(1) Whether the trial court erred in striking Bradford's claim for compensatory damages for emotional pain and suffering resulting from his wrongful discharge;[1]

(2) Whether the trial court erred in striking Bradford's claim for punitive damages; and

(3) Whether the trial court erred in striking Bradford's claim for the tort of reckless infliction of emotional distress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas Hyll Funeral Home is a small business on St. Croix that provides funeral services including funeral directing, burial arrangements, embalming, marble cutting and family assistance. Joseph Bradford, a funeral director and embalmer by trade, began working for the Funeral Home in March of 1991 under the direct supervision of Ted and Jimmie Griffin, husband and wife. Bradford was hired at a rate of approximately $9.40 per hour. His responsibilities included funeral directing, embalming, marble cutting and office work.

On August 12, 1994, Bradford was fired from his position at the Funeral Home.

The parties provide different versions of the facts relating to Bradford's discharge. According to the Funeral Home, Bradford's work performance was deteriorating for some time prior to his discharge. He misused company property, he did not follow instructions, and his responsibilities were curtailed. According to Bradford, on the other hand, his boss Ted Griffin had a history of firing, threatening and acting aggressively toward employees, a condition which worsened following Griffin's involvement in an automobile accident in 1993.

Both parties agree that on August 12, 1994, an incident occurred resulting in Bradford's discharge. The incident concerned Ted Griffin's instruction to Bradford to embalm a body. At the time of Griffin's instruction, Bradford was performing marble-cutting work. According to the Funeral Home, when Griffin told Bradford to embalm the body, Bradford became hostile and threatening. Griffin then told Bradford to go home, and Bradford said he could not be fired. Griffin then fired Bradford. According to Bradford, Ted Griffin had a history of firing Funeral Home employees. When instructed to embalm the body, Bradford responded that he would complete the embalming as soon as he finished cutting the marble headstone. Ted Griffin became angry and struck Bradford with a cane that he was carrying, telling him to begin the task immediately. Bradford then went to embalm the body, saying "don't touch me" along the way. Griffin then fired Bradford.

Bradford was principally unemployed, although he had some undocumented income, between the time of his discharge

1. Whereas this claim is not in fact a claim for "compensatory damages for emotional distress" as labeled by the parties, but is instead a claim for compensatory damages for emotional pain and suffering resulting from Bradford's wrongful discharge, this Opinion refers to it as such. The Court thereby seeks to avoid any confusion with Bradford's separate tort claim of "reckless infliction of emotional distress," which was also dismissed by the trial court and is also an issue on appeal.

and the time he began his current job at the Department of Public Works in 1997. On October 21, 1994, Bradford filed this action against the Funeral Home alleging wrongful discharge under the Virgin Islands Wrongful Discharge Act, V.I.Code Ann. tit. 24, § 76 (1986). The Territorial Court held trial of the matter on January 22 and 23, 1998. At the close of Bradford's case, the trial court struck the following of Bradford's claims: (1) his claim for compensatory damages for emotional pain and suffering resulting from the wrongful discharge, (2) his claim for punitive damages, and (3) his claim for the tort of reckless infliction of emotional distress. The jury, finding wrongful discharge, entered a verdict in Bradford's favor on his wrongful discharge claim and a damage award in the amount of fifty thousand dollars ($50,000) for lost wages.

The Funeral Home moved for a new trial or, alternatively, for remittitur of the damage award. The trial court denied the Funeral Home's motion. The Funeral Home filed the instant appeal, and Bradford filed a cross appeal on the court's striking of his claims for emotional pain and suffering, punitive damages and reckless infliction of emotional distress.

## II. DISCUSSION

### A. Jurisdiction

The District Court of the Virgin Islands, Appellate Division, has jurisdiction to review the decisions of the Territorial Court pursuant to V.I. CODE ANN. tit. 4, § 33 (Supp.1998) and Section 23(A) of the Revised Organic Act of 1954.

### B. Funeral Home's Appeal of the Denial of its Motion for New Trial

■ The Funeral Home appeals the trial court's denial of its motion for new trial on the ground that the jury's verdict was excessive and against the weight of the evidence. An abuse-of-discretion standard governs this Court's review of the Territorial Court's decisions regarding new trial. *See Govt. of the Virgin Islands v. Sampson*, 94 F.Supp.2d 639, 643 (D.V.I.App.Div. 2000) (denial of motion for new trial is reviewed for abuse of discretion); *Maduro v. P & M Nat'l, Inc.*, 31 V.I. 121, 125, 1994 WL 594647 (D.V.I.App.Div.1994) (same).

In the Virgin Islands, the grant or denial of a new trial in a civil matter is governed by Fed.R.Civ.P. 59. *See* Terr. Ct. R. 50. Fed.R.Civ.P. 59 provides in pertinent part:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States

. . . .

Fed.R.Civ.P. 59(a).[2]

■ Virgin Islands courts have found that under Rule 59, a trial court's finding that the verdict is against the weight of the evidence is grounds for a new trial. *See Seafarers Int'l Union of North America v. Thomas*, 42 F.Supp.2d 547, 555 (D.V.I.App.Div.1999). However, "where the movant seeks a new trial on the basis that the verdict is against the weight of the evidence, the Court's power to overturn the jury's award is severely circumscribed." *Virgin Island Maritime Service, Inc. v. Puerto Rico Maritime Shipping Authority*, 978 F.Supp. 637, 647 (D.Vi.1997). The "court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would

---

**2.** "The practice and procedure in the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure . . . ." TERR. CT. R. 7.

result if the verdict were to stand," *Dunn v. HOVIC*, 1 F.3d 1362, 1364 (3d Cir. 1993); *see also Seafarers Int'l*, 42 F.Supp.2d at 555, "or where the verdict, on the record, cries out to be overturned or shocks the conscience." *V.I. Maritime Service*, 978 F.Supp. at 647 (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1349 (3d Cir.1991)). The "shocking of the conscience" analysis is necessarily a subjective one. However, the Third Circuit has determined that in order to grant a new trial for a verdict against the weight of the evidence, the verdict must "be so unreasonable as to offend the conscience of the court." *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir.1979).

On the other hand, the plaintiff is not without any burden with respect to the verdict. A plaintiff has the burden of "providing some evidentiary and logical basis for calculating or, at least, rationally estimating a compensatory award." *Abdulghani v. Virgin Islands Seaplane Shuttle*, 746 F.Supp. 583, 593 (D.Vi.1990). The plaintiff must produce "corroborative proof of loss of earnings and earning power." *Santana v. Mack*, 889 F.Supp. 223, 227, n. 9 (D.V.I.App.Div.1995). The jury is not entitled to resort to conjecture and speculation. *Id.* at 227.

In the instant case, the Funeral Home argues that the verdict was against the weight of the evidence because the fifty-thousand-dollar amount awarded for lost wages was more than Bradford would have earned during his time of unemployment from 1994 to 1997. Coupled with that assertion is the Funeral Home's argument that Bradford worked but gave no evidence of the extent of his earnings during his "unemployment" period, thereby making damages impossible to calculate. As such, the Funeral Home asserts that the damage award was shockingly excessive.

■ This Court cannot find that the trial judge abused his discretion in declining to grant a new trial, nor can we find that the verdict could by any means be considered shocking. First, the jury's finding of wrongful discharge is supported by the lack of evidence in the record of any prior disciplinary problems relating to Bradford. Second, the Funeral Home's argument that Bradford's lost *past wages* do not total fifty thousand dollars is misguided. The trial judge instructed that the jury was entitled to consider lost earnings other than past wages:

> If you find in favor of the Plaintiff, then you should award the Plaintiff such sum as you believe will fairly and justly compensate him for any damages you believe the Plaintiff sustained as a direct result of the occurrence mentioned in the evidence.
>
> . . . .
>
> You are not permitted to award speculative damages. So, you are not to include in any verdict compensation for any perspective loss which, although possible, *is not reasonably certain to occur in the future.*

Instructions to Jury, (App. at 221–222) (emphasis added). In addition, Judge Andrews informed the lawyers of Bradford's entitlement to lost future earnings:

> Therefore, the Court would find that with respect to the wrongful discharge claim, the only damages that are permissible [as a] matter of law are los[t] wages whether it be past, present, or future . . .

Court's Ruling on Request to Dismiss Claim for Damages (App. at 150).

■ Moreover, the jurors were entitled to draw reasonable inferences from the evidence to determine Bradford's loss. For example, the jurors were entitled to conclude that over the course of the unemployment period, Bradford might have

worked longer hours, incurred pay increases, or earned interest on wages received. The Funeral Home provided no evidence to refute such reasonable inferences, and the trial court did not indicate that damages should be capped at lost past earnings.

As such, the verdict is not shocking or against the weight of the evidence. The trial court judge did not abuse his discretion in denying the Funeral Home's motion for new trial. Accordingly, this Court will affirm the trial court's denial of the motion for new trial.

### C. Funeral Home's Alternative Appeal of the Denial of Remittitur of the Damage Award

As an alternative to its appeal of the Territorial Court's denial of a new trial, the Funeral Home appeals the trial court's decision not to remit the amount of damages awarded to Bradford.

■ This Court reviews the trial court's denial of remittitur for abuse of discretion. *See Dunn v. HOVIC*, 1 F.3d 1362, 1364 (3rd Cir.1993). "The ruling of the trial court on the question of adequacy of damages will not be disturbed absent a showing of a manifest abuse of discretion by the trial court." *Seafarers Int'l Union of North America v. Thomas*, 42 F.Supp.2d 547, 555 (D.V.I.App.Div.1999) (citing *Semper v. Santos*, 845 F.2d 1233, 1236 (3d Cir.1988)).

"The [trial] Court should grant … remittitur only if the 'verdict is clearly against the weight of the evidence as to constitute a miscarriage of justice.'" *Id.* (quoting *Henry v. Hess Oil Virgin Islands Corp.*, 163 F.R.D. 237, 243 (D.Vi.1995)). To remit damages, the "judge must find that no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have

awarded such a large sum as damages." *Henry*, 163 F.R.D. at 243.

■ In the instant case, the verdict amount was fully supported by the evidence on the record. As discussed in the new trial analysis above, the jury was entitled to draw reasonable inferences about Bradford's loss. The jury could reasonably conclude that Bradford might have worked longer hours, incurred pay increases, or earned interest on wages received, all of which would have increased his potential earnings. Such inferences by the jury are rational and do not constitute a miscarriage of justice. Thus, the trial judge did not abuse his discretion in denying remittitur of damages. Accordingly, this Court will affirm the trial court's denial of remittitur.

### D. Bradford's Cross Appeal of the Striking of his Claim for Compensatory Damages for Emotional Pain and Suffering

By his cross appeal, Bradford challenges the trial court's ruling that a cause of action stemming from the Wrongful Discharge Act allows an employee to recover only lost wages, and does not provide for the recovery of damages for pain and suffering.

■ The relevant provision of the Wrongful Discharge Act provides for compensatory damages, generally, for the tort of wrongful discharge:

> In addition to the remedies provided by sections 77 and 78 of this chapter, any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter.

24 V.I.C. § 79. Analyzing whether this statute allows compensatory damages for pain and suffering, the trial court found:

> [T]his statute is nothing more than a codification of contract that exists between employees and employer and that as such the remedy of mental damages and mental pain and suffering would only be allowed if there is some separate tort that permits it.
>
> In this case, the Plaintiff has filed such a tort and that is a tort of reckless infliction of emotional distress. Therefore, the Court would find that with respect to the wrongful discharge claim, the only damages that are permissible [as a] matter of law are los[t] wages whether it be past, present, or future, and also punitive damages ....

(App. at 150.) This Court's review of the Territorial Court's interpretation of the statute is plenary. *Government Employees Retirement Sys. v. Hill,* 866 F.Supp. 880, 882 (D.V.I.App.Div.1994); *Stallworth Timber Co. v. Triad Bldg. Supply,* 37 V.I. 49, 52, 968 F.Supp. 279, 281 (D.V.I.App. Div.1997); *Nibbs v. Roberts,* 31 V.I. 196, 204, 1995 WL 78295 (D.V.I.App.Div.1995).

The Wrongful Discharge Act does not define exactly what a party is entitled to recover as "compensatory damages," nor is the term defined elsewhere in the Virgin Islands Code. Accordingly, in order to determine whether the language "compensatory damages" in the statute is intended to encompass damages for emotional pain and suffering, the Court must apply the Restatement (Second) of Torts[3] to the plain meaning of the statute. *See Hess Oil Virgin Islands Corp. v. Richardson,* 894 F.Supp. 211, 215–16 (D.V.I.App.Div.1995) ("The starting point for interpreting a statute is always the language of the statute itself ...."). The Restatement defines compensatory damages as "the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." Restatement (Second) of Torts § 903 at 453. The Restatement elaborates on the issue of emotional damages resulting from the tort:

> When, however, the tort causes bodily harm or emotional distress, the law cannot restore the injured person to his previous position. The sensations caused by harm to the body or by pain or humiliation are not in any way analogous to a pecuniary loss, and a sum of money is not the equivalent of peace of mind. Nevertheless, *damages given for pain and humiliation are called compensatory.* They give to the injured person some pecuniary return for what he has suffered or is likely to suffer.

Restatement § 903 cmt. (a) (emphasis added).

Review of the record in the instant case reveals that the arguments before the Territorial Court resulted in confusion of the tort of intentional infliction of emotional distress (Bradford's claim stemming from the alleged action of Ted Griffin striking Bradford with a cane), with the separate and distinct tort of wrongful discharge. (*See, e.g.,* App. at 127–131.) This Court must draw a distinction between Bradford's claim of intentional infliction of emotional distress—which is also an issue on appeal in this case—and the separate emotional harm flowing from the tort of wrongful discharge.

■ In *Moolenaar v. Atlas Motor Inns, Inc.,* 616 F.2d 87 (3d Cir.1980), the plaintiff brought suit alleging false arrest and intentional infliction of emotional distress, two distinct torts. The court of appeals

---

**3.** In the absence of local statutory or decisional law to the contrary, the rules of common law as expressed in the restatements of the American Law Institute are the rules of decision to be used by the courts of the Virgin Islands. 1 V.I.C. § 4.

found that although the defendant's conduct could not be characterized as extreme or outrageous, thus defeating the plaintiff's claim for intentional infliction of emotional distress, the plaintiff was not precluded from recovering for his emotional injury resulting from the tort of false arrest:

> A distinction must be made ... between the tort [of intentional infliction of emotional distress] and an award for emotional harm flowing from false arrest and imprisonment. If a plaintiff establishes liability for false arrest, he is entitled to compensatory damages for emotional distress, including embarrassment, humiliation, and anxiety. In that instance, it is not necessary to establish intent to cause extreme emotional distress nor is it required that the injury be severe. Liability is founded upon the false arrest, not the intent to inflict distress. Consequently, if upon retrial the plaintiff is able to prove false arrest and imprisonment, he would be entitled to claim compensation for emotional injury.

616 F.2d at 89–90. *See also Ross v. Bricker*, 770 F.Supp. 1038, 1045 (D.V.I.App.Div. 1991) (upholding award of compensatory damages which included award for humiliation, emotional distress, and mental anguish suffered by plaintiff as result of tort committed by defendant). Like the plaintiffs in *Moolenaar* and *Ross*, Bradford was entitled to recover for any emotional harm resulting from the tort of wrongful discharge committed by Thomas Hyll. Accordingly, it is necessary that this Court remand the matter for further proceedings on the issue of compensatory damages.

The question the Court is faced with, then, is the scope of the issues to be determined on remand. It is clear that the issues on remand need involve only damages, not liability, as the Funeral Home has not appealed the finding of its liability to Bradford, and the issue of liability is readily extricable from the issue of

damages. However, the Court must determine whether to remand on the issue of compensatory damages for emotional pain and suffering alone, or whether to remand for a new trial on the issue of damages generally.

■ The question is one of whether the issue of compensatory damages for emotional pain and suffering is inextricably intertwined with the determination of damages generally. The Court notes the general presumption against partial new trials. *See Elcock v. Kmart Corp.*, 2000 WL 1486489 (3rd Cir.2000) (citing *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir.1977) and *Romer v. Baldwin*, 317 F.2d 919, 922–23 (3d Cir.1963)). A partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Elcock*, 2000 WL 1486489 (quoting *Vizzini*, 569 F.2d at 760). "The grant of a partial new trial is appropriate 'only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.'" *Elcock*, 2000 WL 1486489 (quoting *Romer*, 317 F.2d at 922–23).

■ In *Elcock* the court found that the matter should not be remanded for a new trial on a "partial" damage issue because it was possible for the jury to have mingled evidence of economic damages (lost wages) with non-economic damages (pain and suffering). The court stated:

> Having looked at the manner in which evidence of Elcock's damages was presented at trial, we must acknowledge the possibility that the jury did not keep the award of non-economic damages distinct and separate from the award of economic damages. For instance, at trial, Copemann offered not only an opinion as to Elcock's vocational disability, the basis

of her recovery for lost earnings and lost earning capacity, but also testified about the extent of Elcock's psychological and physical injuries, a principal factor in her pain and suffering award. In light of Copemann's testimony, the jury may have considered it appropriate to base its pain and suffering award in part on evidence of Elcock's lost earning capacity. There are [also] other possible areas of overlap.

*Elcock,* 2000 WL 1486489. Similarly in the instant case, the Court cannot find that the economic and non-economic damages are entirely distinct. It is possible that the consideration of evidence and determination of Bradford's compensatory damages for pain and suffering on remand would be intertwined with evidence pertaining to his economic loss. It is also possible that the trial court's error in disallowing non-economic damages affected the verdict with respect to economic damages. Thus, the matter must be remanded on the issue of damages generally, including damages for emotional pain and suffering. Because Bradford was the prevailing party below, the result of the instant remand is that he may either pursue a new trial to determine all damages, or he may accept the damages awarded at the initial trial on the matter. He may not retry on remand solely the issue of damages for emotional pain and suffering.

**E. Bradford's Cross Appeal of the Striking of his Claim for Punitive Damages.**

Bradford also appeals the trial court's ruling, entered at the close of Bradford's case, that Bradford did not present sufficient evidence to support his claim for punitive damages. The Third Circuit has found that the question of whether there exists sufficient evidence to support a punitive damages award is a question of law to be reviewed *de novo. Alexander v. Riga,* 208 F.3d 419, 429 (3d Cir.2000).

The Virgin Islands Wrongful Discharge Act provides a cause of action, in appropriate cases, for punitive damages:

**§ 79. Additional Remedies**

In addition to the remedies provided by sections 77 and 78 of this chapter, any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter.

24 V.I.C. § 79.

However, "Plaintiff must meet an extremely high burden of proof to establish entitlement to punitive damages." *David v. Pueblo Supermarket of St. Thomas,* 740 F.2d 230, 237 (3d Cir.1984). "Under Virgin Islands law, in order to be eligible for punitive damages, 'the plaintiff is required to show that the acts complained of were outrageous, done with evil motive or reckless indifference to [the plaintiff's] rights.'" *In re Tutu Water Wells Contamination Litigation,* 78 F.Supp.2d 436, 445 (D.Vi.1999) (quoting *Justin v. Guardian Ins. Co.,* 670 F.Supp. 614, 617 (D.Vi.1987)). In addition, these criteria must be met by a showing of clear and convincing evidence. *Id.* (citing *Justin,* 670 F.Supp. at 617).

In Bradford's case, he alleges that Ted Griffin committed an "outrageous" act by hitting Bradford on the leg with his cane and subsequently firing him. Such an action, in conjunction with the testimony in this case, does not prove any outrageous conduct warranting punitive damages. Bradford testified that Griffin regularly acted aggressively and in a volatile manner, a condition that worsened following Griffin's injury in an automobile accident. Accordingly, Bradford's evidence did not meet his "extremely high burden" of showing outrageousness with an evil motive or reckless indifference.

While such conduct supports a conclusion that Bradford's discharge was wrongful, Griffin's conduct, by Bradford's own testimony, appears to be more self-motivated than "done with evil motive" toward Bradford. A cane to the leg does not rise to the level of outrageousness. Accordingly, this Court will affirm the trial court's dismissal of Bradford's claim for punitive damages.

### F. Bradford's Cross Appeal of the Striking of his Claim for Reckless Infliction of Emotional Distress

■ Finally, Bradford appeals the trial court's striking of his claim for "reckless infliction of emotional distress." The Virgin Islands recognizes the tort of intentional infliction of emotional distress[4] as defined in the Restatement (Second) of Torts § 46 (1965). *See Seafarers Int'l Union of North America v. Thomas*, 42 F.Supp.2d 547, 557, n. 11 (D.V.I.App.Div. 1999); *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 371 (3d Cir.1986). The Restatement (Second) of Torts states as follows with respect to the tort of intentional infliction of emotional distress:

> § 46. Outrageous Conduct Causing Severe Emotional Distress
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1) (1965).

In order to prevail on a claim for intentional infliction of emotional distress in the Virgin Islands, the aggrieved conduct "by itself must have been so outrageous and so beyond all bounds of decency to be considered atrocious and utterly intolerable in a civilized society." *See Seafarers Int'l*, 42 F.Supp.2d at 557 (quoting *Codrington v. Virgin Islands Port Authority*, 911 F.Supp. 907, 916 (D.Vi.1996)). "It is not enough that the defendant acted with tortious intent or even that he acted with malice." *International Islamic Community of Masjid Baytulkhaliq, Inc. v. United States*, 981 F.Supp. 352, 369 (D.Vi. 1997), *aff'd*, 176 F.3d 472 (3d Cir.1999) (unpublished table decision). "The conduct must be extreme and outrageous." *Id.*

■ In accordance with the analysis on the issue of punitive damages in this case, the conduct of Ted Griffin and the Funeral Home did not constitute outrageous conduct. Accordingly, this Court will affirm the trial court's dismissal of Bradford's claim for intentional infliction of emotional distress.

### III. CONCLUSION

In conclusion, and in accordance with the foregoing analysis, this Court will reverse the Territorial Court's ruling that Bradford was not entitled to compensatory damages for emotional pain and suffering. We will remand the matter for further proceedings on that issue consistent with this opinion. All other rulings by the Ter-

---

4. Bradford's brief titles this claim as one for "reckless infliction of emotional distress." It is somewhat unclear by this title whether he means "intentional infliction" or "negligent infliction" of emotional distress, two distinctly different torts with distinct applicable law. However, Bradford cites in his brief to the section of the Restatement dealing with intentional infliction and outrageous conduct. That section includes the word "reckless" in its language. Thus, the Court interprets Bradford's claim as one for "intentional infliction of emotional distress."

ritorial Court in this matter will be affirmed.